Kathleen G. Alvarado, SBN 117690
Attorney at Law
3890 Tenth Street, 3rd Fl.
Riverside, CA 92501
Telephone: (951) 682-6630
Facsimile: (951) 682-0056

Attorney for Plaintiff,
DAVID MORALES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MORALES<br><br>             Plaintiff,<br><br>vs.<br><br>INDYMAC FEDERAL SAVINGS BANK; ONE WEST BANK, FSB, FORMALLY KNOWN as INDYMAC BANK, FSB; QUALITY LOAN SERVICES, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; FIRST AMERICAN TITLE INSURANCE COMPANY; STEVEN MNUCHIN; KEVIN McCARTHY; JEAN P. FERNANDEZ; MICHELLE NGUYEN; J.C. SAN PEDRO; JAMES C. MORRIS; LEE PASCHEN; NICOLE FUENTES; KEVIN BRABANT; RICK WILKENS; ROGER STOTTS; and DOES 1 to 10,<br><br>             Defendants. | Case No. CV10-1097 JFW(OPx)<br><br>**PLAINTIFF'S AMENDED OPPOSITION TO DEFENDANT ONEWEST BANK FSB, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., STEVEN MNUCHIN, J.C. SAN PEDRO AND ROGER STOTTS' NOTICE OF MOTION TO EXPUNGE LIS PENDENS AND REQUEST FOR ATTORNEY'S FEES IN AN AMOUNT NO LESS THAN $1500**<br><br>Date of hearing: May 3, 2010<br>Time: 01:30 p.m.<br>Ctrm: 16<br>Judge: Hon. John F. Walter |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Plaintiff, David Morales (hereinafter "Plaintiff") hereby respectfully submits his opposition to defendant OneWest Bank, FSB, Mortgage Electronic Registration System, Inc., Steven Mnuchin, J.C. San Pedro and Roger Stotts' (hereinafter "Defendants") Motion to Expunge Lis Pendens and for Attorney's Fees, as follows:

## MEMORANDUM OF POINT AND AUTHORITIES

### I. INTRODUCTION

In or around October 24, 2006, Plaintiff refinanced the subject property, and entered into a loan with INDYMAC BANK.

During the beginning of 2008, Plaintiff started negotiating with INDYMAC BANK for a modification of his loan. Plaintiff was advised during the early part of that year that he needed to be behind in his payments before INDYMAC would consider him for a loan modification. Based upon the recommendations of INDYMAC personnel, Plaintiff stopped making his payments so that he would qualify for a loan modification. Throughout 2008 Plaintiff Morales went back and forth with personnel at INDYMAC in an attempt to modify his loan. In the early part of December 2008, Plaintiff Morales was told that he was approved for a loan modification. However, a few days later, on December 11, 2008, Defendant QUALITY LOAN recorded a Notice of Default against Plaintiff's home at 7057 Mesada St., Rancho Cucamonga, CA 91701, claiming that Plaintiff had failed to make payments on his loan with INDYMAC.

Plaintiff was assured by personnel at INDYMAC that he was still going to get a loan modification. He was advised to sign the loan modification agreement, send in the supporting documents, and send in a check for the new loan payment. He did as he was told. Subsequently, his check was returned because it was not in certified funds. The loan modification agreement did

not indicate that certified funds were required. Plaintiff quickly sent in a cashier's check for the January 2009 payment. That check was accepted and cashed. After this occurred, during a telephone conversation with an INDYMAC employee, Plaintiff was told that his February payment would not be accepted because he was in foreclosure. Plaintiff was now told that he would need to sign a forbearance agreement and pay $5,000.00. He was now told that payment of this $5,000.00 would not guarantee that he would be given a loan modification or that it would guarantee this amount would stop the foreclosure on his home.

On March 19, 2009, ONEWEST acquired all assets on INDYMAC for an estimated 16 billion dollars, and pursuant to Section 10.12 of their Servicing Business Asset Purchase Agreement, ONEWEST was required to *complete the processing of all mortgage loan modifications in process and honor all offers of modifications for which processing has not yet commenced* see attached (Exhibit "A") for this requirement.

Furthermore, ONEWEST had agreed and was required to comply with the Federal Deposit Insurance Corporation (hereinafter 'FDIC") Mortgage Loan Modification Program for so long as any financing provided by the FDIC remained outstanding. (Exhibit "A").

Moreover, ONEWEST knew that loan modifications had been offered by INDYMAC to homeowners prior to its acquisition because ONEWEST agreed, by and through said servicing agreement, to complete and honor all offers of loan modifications made, in process, and/or to be made in the future.

After March 19, 2009, Plaintiff was in constant contact with employees of ONEWEST regarding INDYMAC'S previous promise to give him a loan modification. Plaintiff advised employees of ONEWEST that he had complies with INDYMAC'S request for information and that INDYMAC had agreed to provide Plaintiff with a loan modification because INDYMAC had

accepted Plaintiff's initial payment under the terms of the loan modification.

On May 26, 2009, in reckless disregard of INDYMAC's agreement to provide a loan modification to Plaintiff, Plaintiff's home was sold by the Trustee at a public auction. On August 6, 2009, Plaintiff filed a Notice of Pending Action with the San Bernardino County Recorder's Office and in the San Bernardino Superior Court, Rancho Cucamonga Judicial District, along with San Bernardino Superior Court Case number CIVRS909567. (Exhibit "B") Said Notice of Pending Action was filed on his property in order to secure his claim as owner of said real property while litigation was pending on Plaintiff's claims affecting title.

Plaintiff is confident that after the Court's denial of ONEWEST's motions to Expunge Lis Pendens and to Dismiss, Plaintiff would be able to secure documentary evidence through discovery that will shed substantial light as to the knowledge and actions taken by ONEWEST regarding Plaintiff's claims.

## II. STANDARD FOR RECORDING A LIS PENDENS

Pursuant to California *Code of Civil Procedure* § 405.20, a party to an action who asserts a real property claim may record a notice of pendency of action (Lis Pendens) in which that real property claim is alleged.

### A. Probable Validity:

California *Code of Civil Procedure* (hereinafter "CCP") § 405.3 defines "Probable Validity, with respect to a real property claim, means that it is more likely than not that the claimant will obtain a judgment against the defendant on the claim."

ONEWEST did not enter into this equation after the damage had been done: Plaintiff's home had not been sold when ONEWEST acquired Plaintiff's loan. On March 19, 2009, the Federal Deposit Insurance Corporation completed the sale of INDYMAC to ONEWEST.

ONEWEST assumed all deposits of INDYMAC's branches under ONEWEST. On that date the FDIC, as receiver for INDYMAC entered into a 'SHARED-LOSS AGREEMENT" which set forth a program to be followed in mortgage loan modifications. As set forth in the Declaration of Kathleen G. Alvarado, the Shared Loss Agreement and its exhibits, specifically exhibits thereto, provides a strong motive to ONEWEST to foreclose on Plaintiff's home rather than allow a workout pursuant to the Shared Loss Agreement. Exhibit "C" to the Shared Loss Agreement provides a formula for ONEWEST to follow, which if followed would have allowed Plaintiff to continue to pay for and keep his family home. Even though Plaintiff is not an intended beneficiary of the Shared Loss Agreement, under common law ONEWEST would not be able to intentionally ignore the Shared Loss Agreement with the FDIC, ignore California's State Law, and ignore Plaintiff's ownership rights in order to reap a large profit at Plaintiff's expense. It is estimated that ONEWEST reaps a profit in excess of $170,000.00 from the invalid Trustee's sale of Plaintiff's residence.

More importantly, it is apparent the ONEWEST had an interest in Plaintiff's property prior to the invalid foreclosure sale. ONEWEST obtained its interest on Plaintiff's property on or about March 19, 2009. ONEWEST cannot now claim that they are somehow "immune" to Plaintiff's claim. ONEWEST is a real party in interest which had certain duties, both contractual and legal owing to Plaintiff, by virtue of the purchase by ONEWEST of Plaintiff's loan prior to the purported trustee's sale. Once ONEWEST acquired the asset it is liable for the wrongdoing committed in the guise of ownership. Plaintiff contends that ONEWEST as a defendant has violated Plaintiff's rights.

B. **Property Claim:**

California *Code of Civil Procedure* (hereinafter "CCP") § 405.4 defines "Real Property

ONEWEST assumed all deposits of INDYMAC's branches under ONEWEST. On that date the FDIC, as receiver for INDYMAC entered into a 'SHARED-LOSS AGREEMENT" which set forth a program to be followed in mortgage loan modifications. As set forth in the Declaration of Kathleen G. Alvarado, the Shared Loss Agreement and its exhibits, specifically exhibits thereto, provides a strong motive to ONEWEST to foreclose on Plaintiff's home rather than allow a workout pursuant to the Shared Loss Agreement. Exhibit "C" to the Shared Loss Agreement provides a formula for ONEWEST to follow, which if followed would have allowed Plaintiff to continue to pay for and keep his family home. Even though Plaintiff is not an intended beneficiary of the Shared Loss Agreement, under common law ONEWEST would not be able to intentionally ignore the Shared Loss Agreement with the FDIC, ignore California's State Law, and ignore Plaintiff's ownership rights in order to reap a large profit at Plaintiff's expense. It is estimated that ONEWEST reaps a profit in excess of $170,000.00 from the invalid Trustee's sale of Plaintiff's residence.

More importantly, it is apparent the ONEWEST had an interest in Plaintiff's property prior to the invalid foreclosure sale. ONEWEST obtained its interest on Plaintiff's property on or about March 19, 2009. ONEWEST cannot now claim that they are somehow "immune" to Plaintiff's claim. ONEWEST is a real party in interest which had certain duties, both contractual and legal owing to Plaintiff, by virtue of the purchase by ONEWEST of Plaintiff's loan prior to the purported trustee's sale. Once ONEWEST acquired the asset it is liable for the wrongdoing committed in the guise of ownership. Plaintiff contends that ONEWEST as a defendant has violated Plaintiff's rights.

B. **Property Claim:**

California *Code of Civil Procedure* (hereinafter "CCP") § 405.4 defines "Real Property

Claim", means the cause or causes of action in a pleading which would, if meritorious, affect (a) a title to, or the right to possession of, specific real property..."

Plaintiff has pled sufficient facts to support his allegations against all defendants in the pending lawsuit and more specifically against ONEWEST.

Plaintiff's claims affect the title of the real property owned by Plaintiff, even though ONEWEST has allegedly acquired it at an auction. The acquisition of Plaintiff's property is part of a larger scheme by ONEWEST in that its acquisition was for a lesser amount than its book value. Upon its subsequent sale to a third party for a higher amount, it will help ONEWEST show that a profit has been made as a result of such sale. If ONEWEST is allowed to continue with said scheme, potential investors and homeowners may be affected. ONEWEST declared a profit of $1.6 billion in its first four quarters of reports of operations. However, it fails to reflect ONEWEST's true book value at the time it acquired Plaintiff's property from INDYMAC. That's why the FDIC prohibited ONEWEST from purchasing their excluded assets. This may also be the reason why ONEWEST did not intend to perform loan modifications with its consumers.

Plaintiff's claims are clearly intertwined with his property claim. If ONEWEST is allowed to sell Plaintiff's property to a third party, this will amount to a dismissal of his entire claims. Therefore, Defendant's Motion to Expunge Lis Pendens should be denied.

### III. PLAINTIFF IS ENTITLED TO RECOVER ATTORNEYS' FEES AND COSTS FOR OPPOSING DEFENDANT'S MOTION

Pursuant to California *Code of Civil Procedure* § 405.38, a prevailing party on a motion to expunge shall be entitled to recover its attorneys' fees and costs in making or opposing the motion, unless the Court finds that the other party acted with substantial justification.

*Federal Rule of Civil Procedure*, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief. Furthermore, the liberal rule of pleadings

allows plaintiffs to inform defendant of the claims asserted against them. Not that it will prevail.

ONEWEST was able to submit its responses attacking each of plaintiff's causes of action, thus the pleadings satisfied Rule 8 and Plaintiff's allegations provided defendant with sufficient notice of the relief sought by Plaintiff. Since Plaintiff has alleged several causes of action showing the validity of its real property claim, ONEWEST should compensate Plaintiff's counsel for opposing defendant's motion.

## IV. PLAINTIFF SHOULD NOT BE REQUIRED TO POST A BOND

California *Code of Civil Procedure* § 405.34, provides that the Court may require the posting of a bond in the event the motion to expunge is not granted.

This posting of a bond requirement may not be required due to the fact that ONEWEST has already acquired title to the real property. Since Plaintiff's case is based solely on his real property claims, the granting of ONEWEST's motion will act as the end of Plaintiff's claims.

If granted, ONEWEST will immediately sell the property to a bona fide purchaser causing Plaintiff's claims to be extinguished. If denied, Plaintiff will be the party sustaining substantial damages due to his status as a non-owner of property. Thus, Plaintiff respectfully requests that no party be required to post bond.

## V. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that Defendant's Motion to Expunge Lis Pendens be denied and that Plaintiff be awarded its attorneys' fees and costs in the amount of $1,750.00. Furthermore, Plaintiff respectfully requests that no party be required to post a bond.

Dated: April 12, 2010                                KATHLEEN G. ALVARADO

By: ...*/s/* KATHLEEN G. ALVARADO
Attorney for Defendant DAVID MORALES